# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 137 | **DATE** | 8/14/2001 |
| **CASE TITLE** | Rogers vs. IL Dept of Corrections | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons set forth on the attached order, the defendants' motion to dismiss (47-1) is granted in part and denied in part; the motion is denied as to plaintiffs Rogers and Floyd but granted in all other respects. The claims asserted by plaintiffs Webb, Thomas, Wilborn, Tiney Bey, Conley, Williams and Gray are dismissed. All claims against the Illinois Department of Corrections' Special Evaluation Unit are likewise dismissed. The other defendants are directed to answer the claims of Rogers and Floyd by 8/28/01. The case is set for a status hearing on 9/4/01 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | 58 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | | |
| OR | courtroom deputy's initials | 01 AUG 14 PM 4:11 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DOTHAN ROGERS, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>ILLINOIS DEPARTMENT OF )<br>CORRECTIONS SPECIAL EVALUATION )<br>UNIT, et al., )<br>)<br>Defendants. ) | Case No. 00 C 0137<br><br>DOCKETED<br>AUG 15 2001 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

All but two of the plaintiffs in this lawsuit are civil detainees held in the "Sexually Violent Persons Units" at either the Sheridan Correctional Center in Sheridan, Illinois, or the Joliet Correctional Center in Joliet, Illinois; the other two plaintiffs, Dothan Rogers and Sebron Floyd, were civil detainees at the time the lawsuit was filed but now are in the custody of the Illinois Department of Corrections. The plaintiffs are or were detained under the Sexually Violent Persons Commitment Act, 725 ILCS 207/1 *et seq.*, after a court found them to be "sexually violent persons." The defendants are the psychologists who recommended that they be confined as sexually violent persons. In their amended complaint, the plaintiffs allege that the defendants recommended confinement based on impermissible racial criteria. The defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6).

Under the SVPCA, a "sexually violent person" is "a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has

been found not guilty of a sexually violent offense by reason of insanity and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f). Within 90 days prior to the release of such a person, the agency having custody of the offender (typically the Illinois Department of Corrections) is required to notify the Attorney General and the State's Attorney for the county in which the person was convicted, providing background information as well as "[a] comprehensive evaluation of the person's mental condition, the basis upon which a determination has been made that the person is subject to commitment under subsection (b) of Section 15 of this Act and a recommendation for action in furtherance of the purposes of this Act." *Id.* 207/10(b). Based on the information supplied, the Attorney General or State's Attorney, acting on his own motion or at the request of the agency with custody, may petition the Circuit Court for an order declaring the person to be a "sexually violent person." *Id.* 207/15. Though proceedings on the petition are characterized as civil rather than criminal, *id.* 207/20, at trial "all rules of evidence in criminal actions apply," the respondent has "[a]ll constitutional rights available to a defendant in a criminal proceeding," *id.* 207/35(b), and the state has the burden of proving its allegations beyond a reasonable doubt. *Id.* 207/35(d)(2). If the court or jury finds the respondent to be a sexually violent person, the court orders him committed to the custody of the Department of Human Services "for control, care and treatment until such time as the person is no longer a sexually violent person." *Id.* 207/40(a).

Plaintiffs do not contend that they did not meet the criteria for sexually violent persons. But the state is not required to seek commitment of *all* persons who might qualify under the SVPCA; it has discretion in selecting from the pool of eligible defendants those who should be

2

recommended for confinement. As the Court understands the complaint, the plaintiffs allege that the prosecuting authorities decide whether to petition for post-sentence confinement of a prisoner based upon the recommendations of a "Special Evaluations Unit" (SEU) within the IDOC, a body comprised of twelve women and five men, all Caucasians. Plaintiffs have named as defendants the SEU as well as four psychologists identified as "evaluators."[1] They claim that the SEU selectively recommended them for confinement because they are African-American offenders who committed crimes against at least one Caucasian victim. They allege that offenders with lengthier or more violent histories who were not African-American or whose victims were not Caucasian were not referred for commitment proceedings. They contend that this selective enforcement violates their constitutional right to equal protection and seek damages, an injunction prohibiting the defendants from continuing to base their evaluations and recommendations on race and requiring them to reevaluate the plaintiffs, and supervision of the evaluation process by persons appointed by the Court.

The equal protection clause protects an individual against selective prosecution based on a constitutionally prohibited criterion, such as race or gender. *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996); *Wayte v. United States,* 470 U.S. 598, 608 (1985); *Yick Wo v. Hopkins,* 118 U.S. 356, 374 (1886). The plaintiffs claim that their own race is a motivating factor insofar as it relates to the race of their victim (black men convicted of sexually assaulting white women). The use of the victim's race as a criterion would be irrational and unrelated to any legitimate

---

[1] Recognizing that the SEU–a state agency–is protected from suit in federal court under the Eleventh Amendment, *Ryan v. Illinois Department of Children and Family Services,* 185 F.3d 751, 758 (7th Cir. 1999); *Johnson v. Supreme Court of Illinois,* 165 F.3d 1140, 1141 (7th Cir.), *cert. denied,* 120 S. Ct. 271 (1999), the plaintiffs have withdrawn their claims against this defendant. *See* Response to MTD, p 5, n.3.

3

state purpose, *see McCleskey v. Kemp,* 481 U.S. 279, 292 n. 8 (1987), just as would the use of the offender's race. Thus it appears that plaintiffs have alleged a constitutional violation; a race-based criterion for selecting offenders for civil commitment under the SVPCA would violate the Equal Protection Clause of the Fourteenth Amendment.

That does not mean, however, that a suit under 42 U.S.C. §1983 is the proper mechanism for all of the plaintiffs to vindicate their rights. *Heck v. Humphrey,* 512 U.S. 477 (1994), teaches that if the success of a §1983 plaintiff's claim "would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. We cannot see why this principle would not apply to selective prosecution claims under §1983, and indeed there is some authority to suggest that *Heck* does apply to such claims. *See Norris v. Contra Costa County Judicial System,* No. C-94-3137, 1995 WL 125467 (N.D. Cal. Mar. 15, 1995); *Cobb v. Moore,* No. 2:93-cv-131, 1995 WL 358674 (N.D. Ind. Mar. 23, 1995). And although the plaintiffs have not specifically challenged their confinement or asked to be released, the practical effect of a judgment in their favor on the equal protection claim would be to invalidate the orders that resulted in their confinement. *See Yick Wo,* 118 U.S. at 374 (After finding that the enforcement of the challenged statute was based on the petitioner's race, the Court held that "[t]he imprisonment of the petitioners is therefore illegal, and they must be discharged."). The plaintiffs have argued that they "seek injunctive relief and money damages," and that their "claims are not dependent on the ultimate outcome of their commitment proceedings." *See* Memorandum in Opposition to Motion to Dismiss, p. 6. But the nature of the relief sought is not determinative; rather, in deciding whether the claims are barred, we ask whether the state would

4

be obliged to release the plaintiffs if they won their case. *See Heck*, 512 U.S. at 480; *Clayton-El v. Fisher*, 96 F.3d 236, 242 (7th Cir. 1996). We cannot imagine–and the plaintiffs have not suggested–any set of facts under which a court could conclude that the plaintiffs were confined in violation of their equal protection rights, yet find that their confinement was nonetheless valid.

To the extent the plaintiffs who are still civilly detained want to pursue their claims, they must therefore first petition for habeas corpus relief under 28 U.S.C. §2254, which applies equally to both civil commitments and criminal convictions; the plaintiffs who are confined civilly at Sheridan and Joliet are "in custody" for purposes of the habeas corpus statute. *See, e.g., Duncan v. Walker*, 121 S.Ct. 2120, 2126 (2001). We are not permitted simply to convert this action §1983 to a habeas corpus petition, *see Moore v. Pemberton*, 110 F.3d 22, 24 (7th Cir. 1997), and we must therefore grant defendants' motion to dismiss as to the civilly detained plaintiffs.

The claims raised by Rogers and Floyd, who are now in IDOC custody on convictions that may or may not be related to the convictions that led to their civil confinement proceedings, pose a different set of issues. These plaintiffs are no longer being detained under the SVPCA, and they therefore no longer have the right to challenge that confinement through habeas corpus. *See Lackawanna County District Attorney v. Coss*, 531 U.S. 923, 121 S.Ct. 1567, 1572-73 (2001) (party no longer serving sentence pursuant to a conviction cannot bring a federal habeas corpus petition directed solely at that conviction). *Heck* therefore poses no barrier to Rogers' and Floyd's §1983 damages claims, *see DeWalt v. Carter*, 224 F.3d 607, 617 (7th Cir. 2000) (holding that *Heck* does not apply to situations in which habeas relief is not available); *Hoard v. Reddy*, 175 F.3d 531, 533 (7th Cir.) (same), *cert. denied*, 528 U.S. 970 (1999); indeed, the

5

defendants seem to concede as much. *See* Amended Reply Brief, p. 5 ("Plaintiffs *who are currently civilly detained* must first seek relief through habeas corpus before they can file suit under §1983.") (emphasis added). We therefore must move on to consider whether any of the other barriers defendants seek to raise–the doctrines of claim and issue preclusion, the *Rooker-Feldman* doctrine, and *Younger* abstention–apply.

We quickly dispose of the defendants' arguments on issue preclusion and *Younger* abstention. Neither applies. The selective prosecution issue was never "actually litigated," *see Gilldorn Savings Association v. Commerce Savings Association*, 804 F.2d 390, 392 (7th Cir. 1986) (for collateral estoppel to apply the issue must have been actually litigated and decided on the merits), and there was no ongoing state proceeding when the complaint in this case was filed, *see Majors v. Engelbrecht*, 149 F.3d 709, 712 (7th Cir. 1998) ("[the] first requirement for *Younger* abstention is an ongoing 'judicial in nature' proceeding) (citing *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432-34 (1982)).

The doctrine of claim preclusion (sometimes called "res judicata") applies fully to civil rights suits brought under §1983. *See Allen v. McCurry*, 449 U.S. 90, 96-97 (1980); *Preiser v. Rodriguez*, 411 U.S. 475, 497 (1973). Under Illinois law–state law governs what effect the state court judgment will have in the subsequent action– claim preclusion applies where there is identity of the parties, subject matter and causes of action. *Rooding v. Peters*, 92 F.3d 578, 580 (7th Cir. 1996) (citing *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 626 N.E.2d 225, 228 (1993)). The doctrine "'extends not only to every matter that was actually determined in the prior suit but to every other matter that might have been raised and determined in it.'" *Id.* (quoting *Torcasso*, 626 N.E.2d at 228).

6

In *Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999), the plaintiff was arrested and charged with driving while intoxicated; when his blood alcohol level failed to support that charge, the state's attorney successfully prosecuted him on a lesser charge of driving while impaired. *Id.* at 422. Instead of appealing his conviction, Leather filed a §1983 suit in federal district court, alleging that several members of the Sheriff's Department selectively prosecuted him because he had openly advocated that Putnam County's Emergency "911" communications center should be controlled by civilians, rather than the Sheriff's Department; Leather had never raised this issue in the state court proceeding. *Id.* The district judge reasoned that Leather's selective prosecution claim would necessarily imply the invalidity of his criminal conviction and therefore dismissed the case under *Heck*. *Id.* at 423. The Second Circuit held that dismissal under *Heck* was erroneous because Leather, who was not in custody, had no habeas corpus remedy. *Id.* at 424. But, more importantly for our purposes, the court also concluded that the doctrine of claim preclusion would not bar Leather's §1983 claim:

> It might seem plausible to argue that the plaintiff could have raised the essence of his current claim, selective prosecution, in his New York criminal proceeding, and, not having done so, is barred by claim preclusion from making the allegation now. But [because the plaintiff could not have sought damages while defending himself on the charge of driving while impaired], res judicata does not bar his federal 1983 suit for damages. *Id.* at 424-25.

Similarly, neither Rogers nor Floyd could have sought damages for selective prosecution in their commitment proceedings. Thus, under *Leather*, claim preclusion does not bar Rogers' and Floyd's claims.

Although *Leather* is a Second Circuit case, *Rooding v. Peters* suggests that the Seventh Circuit would follow the same approach. In *Rooding*, the plaintiff had petitioned the state court

7

for a writ of habeas corpus and a writ of mandamus arguing that his continued incarceration violated his equal protection and due process rights; the state court agreed and ordered the plaintiff released. 92 F.3d at 579. The plaintiff then filed a §1983 damages action in federal court, and the district court entered judgment on the pleadings in the defendant's favor on claim preclusion grounds; the court found that the plaintiff could have raised his damages claim in the mandamus action and his failure to do so precluded him from raising the claim in any subsequent action. *Id.* The Seventh Circuit reversed because

> Rooding's §1983 claim for damages, challenging the duration of his confinement, is the type of §1983 claim that would necessarily implicate the validity of his incarceration. Therefore, Rooding's cause of action under §1983 did not accrue until he prevailed in the mandamus action–he could not have joined the state habeas/mandamus action with his §1983 action. *Id.* at 580-81.

Although (as we have held) Rogers and Floyd, unlike the plaintiff in *Rooding,* need not first pursue some other remedy to undo their SVP adjudications, we think *Rooding* is fairly read to exclude claims such as those raised by Rogers and Floyd from the reach of the doctrine of claim preclusion: at the time they were found to be sexually violent persons, they had no right to sue for damages.

We come lastly to the *Rooker-Feldman* doctrine, which "essentially precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims 'inextricably intertwined' with state court determinations." *Remer v. Burlington Area School District,* 205 F.3d 990, 996 (7th Cir. 2000) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 n.16 (1983)). In assessing the applicability of *Rooker-Feldman,* we ask "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that

8

judgment." *Long v. Shorebank Development Corp.*, 182 F.3d 548, 555 (7th Cir. 1999). The cases on this issue "have recognized a distinction between 'a federal claim alleging injury caused by a state court judgment' and 'a federal claim alleging a prior injury that a state court failed to remedy.'" *Id.* (quoting *Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998). "The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state court judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party?" *GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993). We think the claims raised by Rogers and Floyd fall within the latter camp.

In *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), the plaintiff, after losing his state court breach of contract action and his state court abuse of process action, filed a §1983 claim in federal district court alleging that the judges who heard his state court cases and the lawyers representing the defendants in those cases had conspired to ensure his defeat. *Id.* at 1004. The district court dismissed the case under *Rooker-Feldman*, and, although the Seventh Circuit ultimately affirmed the dismissal, it did so on other grounds, flatly rejecting the ruling that *Rooker-Feldman* barred Nesses' claims:

> To show harm and thus keep the present suit alive, Nesses would have to show that the decision by the Indiana court, in his suit for breach of contract was erroneous, and that, it may appear, *Rooker-Feldman* bars him from doing. But the doctrine is not that broad. Were Nesses merely claiming that the decision of the state court was incorrect, even that it denied him some constitutional right, the doctrine would indeed bar his claim. But if he claims, as he does, that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right.... *Id.* at 1005.

9

Along the same lines, *Rooker-Feldman* poses no barrier to Rogers' and Floyd's claims that the people involved in the decision to put them in the civil detention pipeline violated their right to be judged on the basis of their crimes and their mental states rather than on the basis of the color of their skin or the color of their victims' skin.

In *Olison v. Ryan*, 99 C 4384, 2000 WL 1263597 (N.D. Ill. Sept. 5, 2000), the plaintiffs claimed that recommendations on child placement and custody issues made by the Department of Children and Family Services and the Juvenile Protection Association violated the plaintiffs' equal protection rights because they were based on race. The district court concluded that the *Rooker-Feldman* doctrine deprived it of jurisdiction to hear these claims because the defendants' recommendations were "inextricably intertwined" with the state juvenile courts' decisions on the plaintiffs' custody rights. *Id.* at *6. In that case, DCFS and the JPA assessed the plaintiffs' parental fitness because the court, which ultimately ordered parental rights to be suspended or terminated, ordered them to do so; no such relationship is alleged here. Moreover, the plaintiffs in that case would not be able to obtain relief on their equal protection claims without having the court review and reverse the state court decisions. *Id.* at *5. That is not the case with regard to Rogers and Floyd. Although Rogers' and Floyd's claims implicate the validity of the underlying commitment orders in the manner we have described, under *Nesses* and *Long* they are nonetheless independent claims: a person claiming selective prosecution in violation of equal protection does not have to show that he is not guilty—or here, that he did not qualify as a sexually violent person. *See Armstrong,* 517 U.S. at 465 (outlining the elements of a selective prosecution claim).

At first blush this ruling might seem inconsistent with our ruling above that a victory on

the civilly-detained plaintiffs' equal protection claims would necessarily invalidate their commitment orders. But any inconsistency is apparent only. Assuming the facts as alleged are true, the decision to prosecute violated the plaintiffs' equal protection rights, and that violation was complete whether or not the decision ultimately led to confinement. In other words, while vacating the initial decision to prosecute necessarily implies the invalidity of the commitment order, invalidating the commitment order would not be a prerequisite to our finding that the initial decision violated the plaintiffs' equal protection rights.

## Conclusion

For the reasons explained above, the defendants' motion to dismiss [Docket number 47-1] is granted in part and denied in part; the motion is denied as to plaintiffs Rogers and Floyd but granted in all other respects. The claims asserted by plaintiffs Webb, Thomas, Wilborn, Tiney Bey, Conley, Williams and Gray are dismissed. All claims against the Illinois Department of Corrections' Special Evaluation Unit are likewise dismissed. The other defendants are directed to answer the claims of Rogers and Floyd by August 28, 2001. The case is set for a status hearing on September 4, 2001 at 9:30 a.m.

Dated: August 14, 2001

MATTHEW F. KENNELLY
United States District Judge